**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-08657-DOC-PLA                                   Date:  January 5, 2023

Title: WISHTOYO FOUNDATION, ET AL. V. UNITED WATER CONSERVATION DISTRICT

---

PRESENT:

THE HONORABLE DAVID O. CARTER
United States District Judge

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

PROCEEDINGS (IN CHAMBERS):   ORDER DENYING PLAINTIFFS' EX PARTE APPLICATION FOR EXPEDITED BRIEFING [11], PLAINTIFFS' MOTION TO REMAND [12], AND PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [16]; AND VACATING JANUARY 9, 2023 HEARING

Before the Court is Plaintiffs Wishtoyo Foundation, Ventura Coastkeeper, Center for Biological Diversity, and Ecological Rights Foundation's ("Plaintiffs") Motion to Remand the Case to Los Angeles Superior Court ("Motion" or "Mot.") (Dkt. 12), Plaintiffs' Ex Parte Application for an Order Expediting Briefing on the Motion ("Request for Expedited Briefing" or "Request") (Dkt. 11), and Plaintiffs' Ex Parte Application for a Temporary Restraining Order ("TRO Application") (Dkt. 15). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15.

For reasons set forth below, the Court DENIES AS MOOT Plaintiffs' Request for Expedited Briefing, DENIES Plaintiffs' Motion to Remand, and DENIES Plaintiffs' TRO

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-08657-DOC-PLA            Date: January 5, 2023
           Page 2

Application. The Court also VACATES the motion hearing currently scheduled for January 9, 2023 at 8:30 A.M.

## I. Background

This case arises out of Defendant United Water District's ("Defendant") operation and maintenance of the Vern Freeman Dam (VFD) on the Santa Clara River. Plaintiffs allege that the Defendant's operation of VFD, and its diversion of water therefrom, adversely affects the migration of certain species in the river and impedes the flows necessary for their survival. This Court previously addressed the same underlying facts and related arguments in a separate case, *Wishtoyo Foundation, et al. v. United Water Conservation District,* 2:16-cv-03869-DOC-PLA (C.D. Cal. filed June 2, 2016) (*Wishtoyo I*). The Court conducted a bench trial in December 2017 and January 2018, and issued an order on September 23, 2018, including findings of fact and conclusions of law. *See* Order, *Wishtoyo I*, No. 2:16-cv-03869 (C.D. Cal. Sep. 23, 2018) ("September 2018 Order") (Dkt. 209).

The question this Court considered in *Wishtoyo I* is whether Defendant violated Section 9 of the Endangered Species Act, which makes it unlawful for any "person" to "take" any species listed as endangered absent specific exceptions. *See* September 2018 Order ¶ 228 (citing 16 U.S.C. § 1538(a)(1)(B)). Congress defined "take" under the ESA to mean "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id.* ¶ 230. Section 10 of the ESA allows the Secretary of the Interior to grant a permit for a taking otherwise prohibited when "such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." *Id.* (citing 16 U.S.C. § 1539(a)(1)(B)).

The Court also considered Plaintiffs' argument that Defendant's actions "not only harm, but also trap and harass Steelhead, because the dam impedes Steelhead movement and because United's water diversion practices and past 'trap and truck' practices harass Steelhead." *See* ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, *Wishtoyo I*, No. 2:16-cv-03869 (C.D. Cal. Dec. 12, 2017) ("December 2017 Order") (Dkt. 128), at 33. To prevail on their unauthorized "take" claims, the Court instructed that Plaintiffs "must prove by a preponderance of the evidence that the habitat modification 'harms' Steelhead . . . by killing or injuring them." *Id.* at 36 (citing *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 925 (9th Cir. 2000)).

The Court subsequently issued a permanent injunction. *See* Am. J. & Permanent Inj., *Wishtoyo I*, No. 2:16-cv-03869 (C.D. Cal. Dec. 1, 2018) (Dkt. 248) ("Permanent

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-08657-DOC-PLA					Date: January 5, 2023
										Page 3

Injunction" or "Inj."). In issuing the Permanent Injunction, the Court ruled that Defendant's "operation and maintenance of Vern Freeman Dam ('VFD'), including its operation and maintenance of the fish ladder at the VFD," and its "diversion of water from the VFD, constituted unauthorized 'take' of the . . . Steelhead . . . in violation of section 9 of the Endangered Species Act ('ESA'), 16 U.S.C. § 1538." Inj. at 2.

The Court ordered Defendant "to adhere to the water diversion operating rules set forth in Reasonable and Prudent Alternative ('RPA') 2 of National Marine Fisheries Service ("NMFS")'s 2008 Biological Opinion for VFD, pursuant to NMFS's interpretation of RPA 2A." *Id.* at 3. In so doing, Defendant "shall continue to treat the adult Steelhead migration season as extending from January 1 to May 31 and shall treat the juvenile Steelhead migration season as extending from March 1 to May 31." *Id*. As to the fish passage infrastructure, the Court ordered Defendant to achieve a full design, including physical modeling, of the top-two long-term fish passage infrastructure alternatives by January 31, 2020. *Id.* at 5. In developing its design plans and permit applications, the Court ordered that Defendant "shall strongly consider . . . and shall only reject with clearly articulable reasons[] the six guidelines recommended in the by NMFS biologist Anthony Spina ('Spina Decl.') (Dkt. 179-1) that accompanied the NMFS Amicus Brief filed at the Court's request ("NMFS Br.") (Dkt. 179). *Id.* at 4. Defendant was also ordered to "complete forthwith the necessary studies to evaluate all reasonable alternatives to the existing fish ladder, select a preferred alternative, and submit complete regulatory authorization requests no later than June 30, 2020 to NMFS, the U.S. Fish and Wildlife Service ("USFWS"), the U.S. Army Corps of Engineers, the California Department of Fish and Wildlife ("CDFW"), and the California State Water Resources Control Board." Inj. at 4–5.

The Court retained jurisdiction over the matter for the purposes of enforcing or modifying the terms of the Permanent Injunction, which would remain in effect until Defendant (1) receives ESA incidental take authorization for VFD; and (2) completes construction and commences operations of a new fish passage structure that has been approved by NMFS pursuant to ESA incidental take authorization. Inj. at 10. The Court also considered the event that Defendant properly submits all permit applications for the new VFD fish passage infrastructure to the regulatory agencies (NMFS, FWS, U.S. Army Corps of Engineers, CDFW, or California State Water Resources Control Board). If an agency does not complete their reviews in a timely fashion, does not provide sufficient guidance to Defendant, it becomes clear that the permits will not be issued, or that compliance with the ESA is not forthcoming, the Court noted that it "will entertain appropriate motions to join—or the Court will involuntarily join—any such Regulatory

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-08657-DOC-PLA                                          Date: January 5, 2023
                                                                        Page 4

Agency at that time, or the Court will otherwise reconsider the balance it has struck." *Id.* at 11.

On August 21, 2020, the Court extended the deadline for Defendant's submission of design development documents for both alternatives to September 18, 2020; their submission of a physical modeling work plan to November 23, 2020; their submission of a final physical modeling work plan that addresses the regulatory Agencies' comments to February 8, 2021; and their commencement of physical modeling on the hardened ramp from January 30, 2020 to March 22, 2021.[1] On May 10, 2021, the Court granted the extension of time for completion of design of the hardened ramp until September 10, 2021.[2] On October 13, 2021, the Court extended the deadline for completion of the physical modeling of the hardened ramp to October 31, 2022, and set the deadline for submission of regulatory applications on September 22, 2023.[3]

On November 7, 2022, Defendant filed its Twenty-First Compliance Report, *Wishtoyo I*, No. 2:16-cv-03869 (C.D. Cal. Nov. 7, 2022) (Dkt. 553) ("Report"), representing that it "has completed physical modeling of the hardened ramp and vertical slot fish passage alternatives by October 31, 2022" per the injunction. Report at 3. Defendant also represented that, on June 30, 2020, it submitted complete regulatory applications for approval to NMFS, U.S. Fish and Wildlife Service ('USFWS'), U.S. Army Corps of Engineers ('USACE'), California Department of Fish and Wildlife ('CDFW'), and State Water Resources Control Board ('SWRCB'). "However, per the Injunction, United will perform further design and modeling work prior to submitting updated applications to these agencies." *Id.*

On November 21, 2022, the plaintiffs in *Wishtoyo I*, along with one additional organization—the Ecological Rights Foundation—filed an action in Los Angeles Superior Court against Defendant for violations of state law, namely the California Public Trust Doctrine; California Fish and Game Code sections 5901, 5935, 5937, 5948, and 1602; and Article X of the California Constitution. *See generally,* Complaint, *Wishtoyo Foundation, et al. v. United Water Conservation District* (*Wishtoyo II*), No. 22STCP04160 (Cal. Superior Court, L.A. County) ("State Court Complaint") (Dkt. 1-1).

---

[1] Order Re Stipulation Resolving Defendant's Motion to Modify Injunction, *Wishtoyo I*, No. 2:16-cv-03869 (C.D. Cal. Aug. 21, 2020) (Dkt. 475).
[2] *See* Order Modifying Inj. & Denying Mot. for Contempt, *Wishtoyo I*, No. 2:16-cv-03869, (C.D. Cal. May 10, 2021) (Dkt. 502).
[3] *See* Order Modifying Inj., *Wishtoyo I*, No. 2:16-cv-03869 (C.D. Cal. Oct. 13, 2021) (Dkt. 540).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:22-cv-08657-DOC-PLA　　　　　　　　　　　　　　　　　Date: January 5, 2023
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 5

Plaintiffs raised ten (10) causes of action against Defendant in the state court action, seeking declaratory and injunctive relief. *See* State Court Complaint ¶ 9; *id.* at 33 – 34. Four claims are specific to the Steelhead (Counts 1, 4, 6, 8), four concern the Slower Swimming Fish and/or Pacific Lamprey (Counts 2, 5, 7, 9), and two relate to the Santa Clara River generally (Counts 3, 10). *See generally* State Court Complaint. The claims, as stated in the complaint, are as follow:

(1) Violations of the Public Trust Doctrine with respect to Steelhead Preservation;

(2) Violations of the Public Trust Doctrine with respect to Slower Swimming Fish;

(3) Violation of California Constitution, Article X, Section 2;

(4) Violation of Cal. Fish & Game Code §§ 5901, 5948 associated with harm to Steelhead;

(5) Violation of Cal. Fish & Game Code §§ 5901, 5948 associated with harm to Slower Swimming Fish Species and Pacific Lamprey;

(6) Violation of Cal. Fish & Game Code § 5935 associated with harm to Steelhead;

(7) Violation of Cal. Fish & Game Code § 5935 associated with harm to Slower Swimming Fish Species and Pacific Lamprey;

(8) Violation of Cal. Fish & Game Code § 5937 associated with harm to Steelhead;

(9) Violation of Cal. Fish & Game Code § associated with harm to Slower Swimming Fish Species and Pacific Lamprey; and

(10) Violation of Cal. Fish & Game Code § 1602.

On November 29, 2022, Defendant removed the matter to federal court. *See* Notice of Removal (Dkt. 1). On December 8, 2022, Plaintiffs filed a Motion to Remand ("Remand Motion" or "Mot.") (Dkt. 12). Plaintiffs also filed an Ex Parte Application for Expedited Briefing ("Request for Expedited Briefing" or "Request") (Dkt. 11). On December 9, 2022, Defendant opposed the Expedited Briefing Request. ("Opp'n") (Dkt. 13). On December 12, 2022, Plaintiffs filed a reply in support of their Expedited Briefing Request ("Request Reply") (Dkt. 12).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:22-cv-08657-DOC-PLA                              Date: January 5, 2023
                                                            Page 6

On December 15, 2022, Plaintiffs filed an Ex Parte Application for a Temporary Restraining Order ("TRO Application") (Dkt. 15). On December 16, 2022, Defendant opposed. ("TRO Opp'n") (Dkt. 17). On December 18, 2022, Defendant opposed the Motion to Remand. ("Remand Opp'n") (Dkt. 18). On December 26, 2022, Plaintiffs filed a reply in support of their Motion. ("Remand Reply") (Dkt. 20).

## II.      Legal Standard

### A. *Ex Parte* Application for Temporary Restraining Order

"[C]ourts have recognized very few circumstances justifying the issuance of an *ex parte* TRO." *Reno Air Racing Ass'n*, 452 F.3d 1126, 1131 (9th Cir. 2006). "The most common reasons for issuing an ex parte temporary restraining order are where notice to the adversary party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing and a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Shallman v. Ocwen Loan Servicing, LLC*, No. SACV 14-0863-DOC, 2014 WL 2533836, at *2 (C.D. Cal. June 5, 2014) (internal quotation marks and citation omitted).

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking preliminary injunctive relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984). Courts have recognized very few circumstances justifying the issuance of an ex parte temporary restraining order. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

### B. Motion to Remand

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-08657-DOC-PLA                                                                                     Date: January 5, 2023
                                                                                                                                          Page 7

"Federal courts are courts of limited jurisdiction," so they "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. Federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law when (1) federal law creates the cause of action asserted, or (2) a state law cause of action necessarily involves a substantial federal issue. *Gunn v. Minton*, 133 S. Ct. 1059, 1064–65 (2013).

Federal question jurisdiction exists "when federal law creates the cause of action asserted." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S.Ct. 1562, 1569 (2016); *Hornish v. King Cty.*, 899 F.3d 680, 687 (9th Cir. 2018). The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rainero*, 844 F.3d at 837; *California v. United States*, 215 F.3d 1005, 1014 (9th Cir. 2000). The well-pleaded complaint rule does not permit a finding of jurisdiction "predicated on an actual or anticipated defense," or "upon an actual or anticipated counterclaim." *Vaden*, 556 U.S. at 60; *Hornish*, 899 F.3d at 688.

Even if the complaint does not present a federal question on its face, removal jurisdiction may still exist. "The artful pleading doctrine is a corollary to the well-pleaded complaint rule, and provides that [a]lthough the plaintiff is master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." *Lippitt v. Raymond James Financial Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (quotations and citations omitted). The artful pleading doctrine stands for the "principle that a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (internal quotation marks and citations omitted); *see Hansen v. Group Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:22-cv-08657-DOC-PLA                                           Date: January 5, 2023
                                                                                         Page 8

Accordingly, federal question jurisdiction can exist where a state law claim "necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state power." *Manning*, 136 S.Ct. at 1570; *Hornish*, 899 F.3d at 687.

Federal question jurisdiction also exists where "federal law not only preempts a state law cause of action, but also substitutes an exclusive federal cause of action in its place." *Hansen*, 902 F.3d at 1057. Additionally, the Ninth Circuit has recognized that federal question jurisdiction exists over a state law action where the action is a collateral attack on a federal court judgment, i.e., when the state action seeks to "obtain relief from a federal judgment. . . ." *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 778 (9th Cir. 1994).

### III. Discussion

#### A. Request for Expedited Briefing and Temporary Restraining Order

According to Plaintiffs, "[e]xpeditious review under 28 U.S.C. § 1657" is necessary "to prevent imminent harm to Steelhead—especially in December, which is typically the start of potential adult Steelhead migration in the Santa Clara River, and then again commencing in January, which is typically the start of potential juvenile Steelhead migration in the Santa Clara River." Request at 11. But this Court, in its September 2018 Order, already considered—and rejected—Plaintiffs' identical request for "a broader period to cover a migration period of November 1 to June 30 for adult Steelhead and November 1 to July 31 for juvenile Steelhead." *See* September 2018 Order ¶ 291. The Court instead adopted "the migration period of January 1–May 31 for adult Steelhead and March 1 to May 31 for juvenile Steelhead," finding it "a well-reasoned compromise between weighty interests that expert scientists at the agency of jurisdiction developed in order to ensure a properly functioning migration corridor . . . ." *Id.*

Based on findings this Court already made in *Wishtoyo I*, Plaintiffs request preliminary injunctive relief that "provid[es] for a temporary flow regime to protect the species harmed by the violations of California Fish and Game Code section 5937." TRO Application at 17 – 18. Plaintiffs argue that, in considering the elements of a TRO, "the case law is clear that there is to be no balancing of [Defendant's] purported interests with its violations of California Fish and Game Code section 5937" because the California legislature has "already struck the balance of the equities and consideration of public interest concerns." *Id.* at 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:22-cv-08657-DOC-PLA                                                                  Date: January 5, 2023
                                                                                                Page 9

The Court disagrees. Section 5937 of the Fish and Game Code states that "[t]he owner of any dam shall allow *sufficient* water at all times to pass through a fishway, or in the absence of a fishway, allow *sufficient* water to pass over, around or through the dam, to keep in *good* condition any fish that may be planted or exist below the dam." Cal. Fish & Game Code § 5948. Similarly, under California's Public Trust Doctrine, the state "may make decisions that balance competing public trust uses but is not free to *completely* ignore or destroy trust resources in favor of non-trust uses, including potential public interests such as agricultural and municipal supply. *See* State Court Complaint ¶ 29 (citing *Citizens for Eastshore Parks v. State Lands Comm*. (2011) 202 Cal.App.4th 549, 577) (emphasis added).

Accordingly, Plaintiffs' state law claims center around whether Defendant's diversion or use of water in the Santa Clara River offers reasonable environmental protection and sufficiently balances competing interests. *See generally* State Court Complaint ¶¶ 17–37. Because the Court's *Wishtoyo I* rulings weighed a number of interests, implicated here and by state law, that Plaintiffs have not met their burden of demonstrating a likelihood of success on the merits.

Accordingly, the Court DENIES Plaintiff's *Ex Parte* Application for a TRO.

## B. Remand

In its Notice of Removal, Defendant asserts that the Court has original jurisdiction under 28 U.S.C. § 1331 "as a civil action that presents a federal question." Notice of Removal at 4.[4] Further, "any additional state law claim falls within the supplemental jurisdiction of this Court under 29 U.S.C. § 1367(a) in that they are so related to the federal claims and the Federal Injunction that they form part of the same case or controversy . . . ." *Id*.

Plaintiffs move for remand, arguing that Court has no original or supplemental jurisdiction over this present action, because—unlike *Wishtoyo I*—this action asserts claims only under California law. Mot. at 2–3. According to Plaintiffs "[t]he factual interrelationship between the environmental harm issues adjudicated and injunctive remedy awarded in the *Wishtoyo* Federal Case and the similar . . . environmental harm and remedy issues that will be addressed in the State Court Action is no basis for finding federal question." Mot. at 22.

---

[4] Defendant has conceded that its assertion of diversity of citizenship jurisdiction under 28 U.S.C. § 1441(b) was a scrivener's error. Opp'n at 10 n.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:22-cv-08657-DOC-PLADate: January 5, 2023
Page 10

Defendant opposes, that questions of federal law are necessarily embedded in the state court action, because Plaintiffs' state law claims are the subject of this Court's *Wishtoyo I* rulings. *See generally* Remand Opp'n. Specifically, Defendant argues that the state court action seeks to Defendant's operation of the Vern Freeman Dam, which is expressly governed by this Court's Permanent Injunction. Remand Opp'n at 8–9. Because the state court action is effectively a collateral attack on a federal judgment and injunction, Defendant asserts federal question jurisdiction under *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773 (9th Cir. 1994).

In *Eyak Native Vill. v. Exxon Corp.*, the Ninth Circuit recognized that federal jurisdiction may exist over a state court action properly characterized as equivalent to a motion under Federal Rule of Civil Procedure 60 where it seeks to obtain relief from the terms of a federal judgment and order. 25 F.3d 773, 777–78 (9th Cir. 1994) (holding that district court properly "recharacterized" claims in state court as "federal claims" asserting "independent action for relief from [a federal] judgment").

Plaintiffs argue that *Eyak* is inapplicable here, because Plaintiffs "do not and could not seek a state court judgment modifying or in any way granting relief from this Court's judgment and injunction," *Id.* Plaintiffs cite to *Negrete v. City of Oakland*, 46 F.4th 811, 818 (9th Cir. 2022) for the proposition that removal is proper only if "state court plaintiffs are effectively requesting the state court to grant relief from the federal court decree." *Id.* Because Plaintiffs here are only "asking a state court to impose *additional* state law-based restrictions on United's water diversions beyond those imposed in the *Wishtoyo* federal case," Plaintiffs argue that remand is proper. *Id.*

Plaintiffs' reliance on *Negrete v. City of Oakland* is misplaced. There, the Ninth Circuit held that the district court lacked federal question jurisdiction over an action by officers seeking declaratory relief that the city—in failing to comply with a federal consent decree—violated the city's charter, municipal code, and other sources of state law. *See* 46 F.4th 811, 818 (9th Cir. 2022). The Ninth Circuit distinguished *Eyak* on the basis that "the officers are not parties, or in privity with parties, to the [federal] judgment, and their petition and complaint do not seek to challenge, enforce, or otherwise modify the terms of the Consent Decree or the federal court orders in [the federal action]." *Id.* at 818. Moreover, "[t]he officers' petition and complaint simply [sought] compliance with, and clarification of, the Charter and the Municipal Code." *Id.*

Unlike the plaintiffs in *Negrete*, Plaintiffs here are parties to the Court's Permanent Injunction and now "seek preliminary relief through a temporary restraining

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:22-cv-08657-DOC-PLA                                                        Date: January 5, 2023

                                                                                                                                 Page 11

order and preliminary injunction in this case to address [] ongoing harm . . . not limited by the Court's injunction in the *Wishtoyo* Federal Case." Remand Reply at 2. Plaintiffs' state court action specifically asks to enjoin Defendant "to take such actions as required to bring its operation and maintenance of Vern Freeman Dam into compliance with Fish and Game Code sections 5901, 5935, 5937, 5948, and 1602" and any "actions as required to bring its operation and maintenance of firm Freeman Dam into compliance with the common law and the California Constitution." *See* State Court Complaint at 33. Thus, any relief Plaintiff obtains in the state court action would necessarily implicate the terms of the Permanent Injunction this Court previously issued.

      This Court, moreover, is already addressing the factual and legal issues underlying Plaintiffs' state court action. In enforcing and monitoring the Permanent Injunction in *Wishtoyo I*, the Court continues to consider the implications of state law and local regulatory processes. Attached to the Twenty-First Compliance Report in *Wishtoyo I*, for example, is a letter from the California Department of Fish and Wildlife raising concerns that the designs of the Vertical Slot "would need to be modified to account for passage needs of slow-swimming fish prior to physical modelling." *See* Ex. C to Report (Dkt. 553-7). In another letter dated October 22, 2022, CDFW notes that "NMFS and CDFW have both expressed confidence in MOD-6's ability to provide fish passage and provide sufficient flows downstream of VFD to meet Fish and Game Code sections 5901 and 5937," reiterating that "the Vertical Slot does not appear to meet NMFS's steelhead-passage objectives, nor is it expected to comply with applicable State law, namely section 5901 and 5937." *Id.*

      Because Plaintiffs' state law claims directly and substantially implicate this Court's ongoing oversight of Defendant's operation of the VFD in *Wishtoyo I*, any relief Plaintiffs obtain in state court will necessarily interfere with future proceedings in this Court or otherwise alter the effect of this Court's prior findings and rulings.

      Consistent with the Permanent Injunction, however, the Court will continue to entertain appropriate motions to join any state agencies as necessary to inform Plaintiffs' state law claims and motions to reconsider the balance it has struck in the Permanent Injunction, taking any distinct aspects of California law into account. *See e.g.*, Inj. at 3–4 (providing that, if regulatory licensing issues arise, the Court "will entertain appropriate motions to join—or the Court will involuntarily join—any such Regulatory Agency at that time, or the Court will otherwise reconsider the balance it has struck").

      Accordingly, Plaintiff's Motion to Remand is DENIED.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CIVIL MINUTES – GENERAL

Case No. 2:22-cv-08657-DOC-PLA　　　　　　　　　　　　　　　　　　　　　　　Date: January 5, 2023
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 12

### IV. Disposition

For the reasons set forth above, the Court **DENIES** Plaintiffs' *Ex Parte* Application for a TRO, **DENIES** Plaintiff's Motion to Remand, and **DENIES AS MOOT** Plaintiffs' *Ex Parte* Application for Expedited Hearing.

The Clerk shall serve the minute order on the parties.

MINUTES FORM 11　　　　　　　　　　　　　　　　　　　　　　　Initials of Deputy Clerk: kd

CIVIL-GEN